UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 09-CV-21754-MOORE/SIMONTON

PAMELA BHIM,

        Plaintiff,

v.

RENT-A-CENTER, INC.

        Defendant.
_____/

**DEFENDANT'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1), (6) OR IN THE ALTERNATIVE, TO STAY PROCEEDINGS AND COMPEL ARBITRATION AND BRIEF IN SUPPORT**

Defendant Rent-A-Center, Inc. ("RAC" or "Defendant") files this its Motion to Dismiss, Or In The Alternative, To Stay Proceedings and Compel Arbitration, and Brief in Support.

**I.    INTRODUCTION**

On June 25, 2009, Plaintiff Pamela Bhim ("Bhim" or "Plaintiff"), asserting national origin discrimination in violation of Title VII of the Civil Rights Act, instituted this action against her former employer, RAC, in the United States District Court for the Southern District of Florida. Plaintiff, however, is precluded from pursuing her claims in court because of her written agreement to submit her claims to binding arbitration. Plaintiff entered into a Mutual Agreement to Arbitrate Claims ("Arbitration Agreement") in which she agreed to arbitrate all "past, present and future" disputes with RAC, including all statutory claims. A true and correct copy of the Arbitration Agreement executed by Plaintiff is attached to the accompanying

Declaration of Steven A. Spratt (Ex. A, "Spratt Dec.") as Exhibits 1 and 2[1]. The Arbitration Agreement expressly requires arbitration of Plaintiff's claims against RAC, including all claims for "discrimination (including, but not limited to race, sex, sexual harassment, sexual orientation, religion, **national origin**, workers' compensation, marital status, medical condition, handicap or disability)" (Ex. A, Spratt Dec., Ex. 2 at 1) (emphasis added).

Defendant can establish what the U.S. Supreme Court has described as the "gateway issues:" the existence of a valid arbitration agreement that covers the instant dispute. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). Importantly, the Agreement also clearly and unmistakably requires that the arbitrator determine in the first instance whether the Agreement is enforceable and whether Plaintiff's claims are arbitrable

As a result of Plaintiff's failure to submit her claims to arbitration as required by the Arbitration Agreement, Defendant requests that the Court dismiss her claims pursuant to Federal Rule of Civil Procedure 12(b)(1) and/or (6) or, in the alternative, stay these proceedings and compel arbitration based on Plaintiff's agreement to arbitrate disputes arising between her and Defendant.

## II.   STATEMENT OF FACTS

On or about November 17, 2006, as a condition of employment with RAC, Plaintiff executed a *Mutual Agreement to Arbitrate Claims*. (Ex. A, Spratt Dec., Exs. 1 and 2.). Under the "Claims Covered By The Agreement" section of the Agreement, all disputes between the parties must be arbitrated:

> The Company and I mutually consent to the resolution by arbitration of all claims or controversies ("claims"), past, present or future, including without limitation, claims arising out of or related to my application for employment, assignment/employment, and/or the

---

[1] Hereinafter, citation to the Arbitration Agreement will be to Exhibit 2 of Spratt's Declaration attached hereto as Exhibit A.

Case No. 09-CV-21754-MOORE/SIMONTON

> termination of my assignment/employment that the Company may have against me or that I may have against any of the following: (1) the Company, (2) its officers, directors, employees, or agents in their capacity as such or otherwise, (3) the Company's parent, subsidiary, and affiliated entities, (4) the benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates, and agents, and/or (5) all successors and assigns of any of them.
>
> The only claims that are subject to arbitration are those that, in the absence of this Agreement, would have been justiciable under applicable state or federal law. <u>The claims covered by this Agreement include, but are not limited to</u>: . . . <u>tort claims for discrimination</u> (including, but not limited to race, sex, sexual harassment, sexual orientation, religion, national origin, age, workers' compensation, marital status, <u>medical condition, handicap or disability</u>); . . . <u>and claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance</u>, except claims excluded in the section of this Agreement entitled "Claims Not Covered by the Agreement."
>
> Except as otherwise provided in this Agreement, both the Company and I agree that neither of us shall initiate or prosecute any lawsuit or adjudicative administrative action (other than an administrative charge of discrimination to the Equal Employment Opportunity Commission or an administrative charge within the jurisdiction of the National Labor Relations Board) in any way arising out of or related to any claim covered by this Agreement. Nothing herein shall be construed to relieve any party of the duty to exhaust administrative remedies by filing a charge or complaint with an administrative agency and obtaining a right to sue notice, where otherwise required by law.

(Ex. A, Spratt Dec. Ex. 2, at 1) (emphasis added).[2]

In her Complaint, Plaintiff alleges Defendant violated Title VII of the Civil Rights Act. These claims are indisputably covered under the express terms of the Arbitration Agreement signed by Plaintiff and, therefore, must be submitted to binding arbitration.

## III.   LEGAL ANALYSIS

### A.   The Arbitration Agreement is Valid and Enforceable.

To determine whether Plaintiff entered into a valid and enforceable agreement to arbitrate

---

[2] The only claims identified in the "Claims Not Covered By The Agreement" section are workers' compensation, unemployment compensation, and small claims, which are not applicable here.

3

Case No. 09-CV-21754-MOORE/SIMONTON

her disputes with Defendant, the Arbitration Agreement must be examined under Florida law regarding contract formation. *See First Options*, 514 U.S. at 944. Whether the parties have agreed to arbitrate a dispute is governed by ordinary contract principles, which in this case are derived from the substantive law of Florida because the events surrounding the formation and execution of the Arbitration Agreement arose in Florida. *Id.; see also, Caley v. Gulfstream Aerospace Corp.,* 428 F.3d 1359, 1367-68 (11th Cir. 2005).

Under Florida law, a binding contract exists when: (1) the parties have mutually assented "to a certain and definite proposition"; and (2) the parties' agreement is supported by consideration. *See Office Pavilion S. Fla., Inc. v. ASAL Prod., Inc.*, 849 So.2d 367, 370 (Fla. 4th DCA 2003); *Sun Bank of Tampa v. Bryan,* 527 So.2d 290, 294 (Fla. 2nd DCA 1988). The instant Arbitration Agreement meets the requirements of Florida substantive contract law and, thus, is a valid and enforceable agreement by Plaintiff to arbitrate her claims.

First, Plaintiff's signature evidences her clear and definite consent. Specifically, the Arbitration Agreement sets forth clear, definite terms and the essential terms were communicated to Plaintiff in writing. The clear intent of the parties was to "mutually consent to the resolution by arbitration of all claims or controversies . . ." (Ex. A, Spratt Dec., Ex. 2, p.1). Moreover, the parties have a cause or reason for obligating themselves. Plaintiff accepted the obligation to arbitrate as a condition of her respective employment and mutually gave up the right to litigate her claims as consideration for the Arbitration Agreement, as explicitly recited therein: "The promises by the Company and by me to arbitrate differences, rather than litigate them before courts or other bodies, provide consideration for each other." (Ex. A, Spratt Dec., Ex. 2, p. 5). Plaintiff's Arbitration Agreement easily satisfies both of these requirements.

The parties in this case mutually agreed to a "certain and definite proposition"—namely, to

4

resolve "by arbitration all claims . . . that the Company may have against [Plaintiff] or that [Plaintiff] may have against . . . the Company." (Ex. A, Spratt Dec., Ex. 2, p. 1.) And, Plaintiff indisputably assented to this "certain and definite proposition" when she signed the Arbitration Agreement on November 17, 2006. *See Sabin v. Lowe's, Inc.*, 404 So. 2d 772, 773 (Fla. 5th DCA 1981) (holding "[a] party has a duty to learn and know the contents of a proposed contract before he signs and delivers it and is presumed to know and understand its contents, terms and conditions."); *Snelling & Snelling, Inc. v. Reynolds*, 140 F. Supp. 2d 1314, 1322 (M.D. Fla. 2001) (holding "[a] party who signs a contract is presumed to know and understand the contents"). In addition, Plaintiff's Arbitration Agreement expressly states: "The promises by the Company and by me to arbitrate differences, rather than litigate them before courts or other bodies, provide consideration for each other." (Ex. A, Spratt Dec., Ex. 2, p. 4.). This mutual exchange of promises constitutes ample consideration to support the Agreement. *See Boyle v. Schmitt,* 578 So. 2d 367, 368 (Fla. 3rd DCA 1991) (holding that the agreement at issue "was supported by sufficient consideration, namely, the mutual promises exchanged" by the parties); *Wilson v. Par Builders, II, Inc.*, 879 F. Supp. 1187, 1190 (M.D. Fla. 1995) ("In Florida, . . . mutually enforceable promises may constitute valid consideration for each other"); *Benoay v. E.F. Hutton & Co., Inc.*, 699 F. Supp. 1523, 1529 (S.D. Fla. 1988) (holding that "[t]he consideration exchanged for one party's promise to arbitrate [was] the other party's promise to arbitrate"). As a matter of law, Plaintiff's Arbitration Agreement is valid and enforceable under ordinary state law principles.

   **B. The Federal Arbitration Act Governs the Arbitration Agreements.**

The FAA applies to agreements "involving commerce." 9 U.S.C. § 2. RAC operates retail stores throughout the United States renting and selling a variety of merchandise to consumers. RAC purchases its inventory from manufacturers, suppliers, and distributors, and

5

such inventory is transported across state lines for delivery to RAC's retail stores. (Ex. A, Spratt Dec. at ¶ 3.) All of these activities involve interstate commerce. Thus, the Arbitration Agreement between RAC and Plaintiff is governed by the FAA. Moreover, Plaintiff agreed in the Arbitration Agreement that "the [C]ompany is engaged in transactions involving interstate commerce and that my assignment/employment with the Company involves such commerce." (Ex. A, Spratt Dec., Ex. 2, p. 1.) Plaintiff also agreed that the FAA "shall govern interpretation, enforcement, and all proceedings pursuant to this Agreement." (Ex. A, Spratt Dec., Ex. 2, p. 1.)

Because the FAA governs the Arbitration Agreement, the Supremacy Clause of the United States Constitution requires that Plaintiff's claims be arbitrated notwithstanding any contrary state law. Under the Supremacy Clause, U.S. CONST. art. VI, cl. 2, the FAA preempts all otherwise applicable or conflicting state laws. *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984) ("In enacting Section 2 of the [FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agree to resolve by arbitration."). Indeed, the FAA is a "[c]ongressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of this Section [§2 of the FAA] is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Thus, Plaintiff's claims are arbitrable under the FAA.

    **C.**    **Federal Law Favors Arbitration of Plaintiff's Claims.**

The FAA was originally enacted in 1925 to reverse the "longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts."

6

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *see also Circuit City Stores v. Adams*, 532 U.S. 105 (2001). In enacting the FAA, Congress intended to overcome courts' reluctance to enforce arbitration agreements. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270 (1995). *Sims v. Clarendon Nat. Ins. Co.,* 336 F.Supp.2d 1311, 1316 (S.D. Fla. 2004). The FAA not only placed arbitration agreements on equal footing with other contracts but also established a federal policy in favor of arbitration. *See Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 90 (2000); *Southland*, 465 U.S. at 10. The FAA permits private parties to "trade [] the procedures . . . of the courtroom for the simplicity, informality, and expedition of arbitration." *Gilmer,* 500 U.S. at 31.

This "liberal federal policy favoring arbitration agreements" in effect creates "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within coverage of the [FAA]." *Perry v. Thomas*, 482 U.S. 483, 489 (1987). As such, the United States Supreme Court has warned against judicial rulings designed to erode FAA precedence "by indirection." *Circuit City Stores,* 532 U.S. at 122. Accordingly, it is the intent of Congress "to move the parties to an arbitrable dispute out of court and into arbitration *as quickly and easily as possible.*" *Moses H. Cone Mem'l Hosp.*, 460 at 22 (emphasis added).

        **D.**      **Doubts Are Resolved in Favor of Arbitration.**

"[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25. Cases in the United States courts have recognized this policy, and have applied a liberal presumption in favor of arbitrability. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. at 31; *see also, Hill v. Rent-A-Center, Inc.,* 398 F.3d 1286, 1288 (11th Cir. 2005) (holding all doubts are to be resolved in favor of arbitrability). The United States Supreme Court reaffirmed its commitment to the arbitration process in *Circuit City Stores, Inc. v. Adams*, 121 S. Ct. 1302 (2001), where the Court held that

the FAA applies to employment agreements. The *Circuit City* decision constitutes a ringing endorsement of the arbitration process by our nation's highest court and reaffirms that the FAA compels judicial enforcement of otherwise valid arbitration agreements. *See id.* (noting that "there are real benefits to the enforcement of arbitration provisions" and that the Court has "been clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context"). Indeed, courts must defer to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute . . . doubts should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-583 (1960). Accordingly, this Court should resolve any doubts regarding the scope and enforceability of the Arbitration Agreement in favor of arbitration.

> **E.** **Florida Law Also Requires Enforcement of the Arbitration Agreement.**

Florida state law, like federal law, strongly favors arbitration. There is a strong presumption in favor of arbitration under Florida law, which is consistent with federal law that strongly favors arbitration. Florida public policy favors arbitration as an efficient means of settling disputes because it avoids the delays and expenses of litigation. *KFC Nat'l Management Co. v. Beauregard*, 739 So. 2d 630, 631 (Fla. 5th DCA 1999); *Gale Group. Inc. v. Westinghouse Elec. Corp.*, 683 So. 2d 661, 663 (Fla. 5th DCA 1996). In view of that public policy, all questions concerning the scope of the right to arbitrate should be resolved in favor of arbitration. *See Beauregard*, 739 So. 2d at 631.

Thus, under Florida law, as under federal law, an arbitration agreement may only be invalidated for the same reasons as other contracts. In other words, where, as here, a valid agreement to arbitrate exists, the Court must order the parties' dispute to arbitration.

8

**F.    The Court Should Sever any Offending Provisions of the Arbitration Agreement.**

In the event that any of the provisions of the Agreement are found unenforceable, the Court should strike the provisions, and render the rest of the Agreement enforceable. The parties expressly agreed:

> If any provision is adjudged to be void or otherwise unenforceable, in whole or in part, such adjudication shall not affect the validity of the remainder of the Agreement. All remaining provisions shall remain in full force and effect.

(Ex. A, Spratt Dec., Ex. 2 at p. 4). Accordingly, if the Court finds infirmities in the Agreement, the offending provisions should be severed, allowing the remainder of the Agreement to stay in tact and enforceable. *Andres v. Hometown Mortgage Svcs.,* 346 F.3d 1024, 1031-32 (11th Cir. 2003)

**G.    The Court Should Dismiss Plaintiff's Complaint**

Where some, but not all, of a plaintiff's claim are arbitrable, a stay of judicial proceedings pending arbitration is appropriate. However, when all of a plaintiff's claim are arbitrable, a stay is not necessary, and the legal action should be dismissed. *See e.g. Caley v. Gulfstream Aerospace Corp.,* 428 F.3d 1359, 1379 (11th Cir. 2005); *See also Alford v. Dean Witter Reynolds,* 975 F.2d 1161, 1164 (5th Cir. 1992); *Clayton v. Woodmen of the World Life Ins. Soc.,* 981 F.Supp. 1447, 1451 (M.D. Ala. 1997). Alternatively, the Court is required to stay the action pending resolution of this motion to compel arbitration. *See* 9 U.S.C. §§3, 4. As fully set forth above, a binding and enforceable agreement to arbitrate each of Plaintiff's claims clearly exists. Accordingly, the Court should dismiss the Complaint or order Plaintiff to submit her claims to binding arbitration and stay this action until arbitration is completed.

**H.    An Alternate Basis to Compel Arbitration Exists.**

An alternative basis to compel arbitration exists. By incorporating the rules of the AAA, JAMS and NAF (Ex. A, Spratt Dec. Ex. 2 at p. 3), the Agreement between RAC and Plaintiff

contains a clear and unmistakable intent to submit the question of arbitrability to the arbitrator. The applicable rules of all three of these ADR organizations provide that the arbitrator has the authority to decide his/her own jurisdiction, including issues regarding the existence, validity, and scope of the agreement to arbitrate. *See* Exs. B, C, and D.[3]

Normally, in deciding whether to compel arbitration, the trial court is tasked with determining two "gateway" issues: (1) whether there was an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83-84 (2002). Additionally, the Supreme Court has stated that the "question of arbitrability is for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." *First Options*, 514 U.S. at 944; *AT&T Techs*, 475 U.S. at 649.

Here, the parties have clearly and unmistakably given the arbitrator the authority to decide whether the Arbitration Agreement is applicable and enforceable. (Ex. A, Spratt Dec., Ex. 1 at 2-3.). By incorporating rules that clearly and explicitly provide the arbitrator with the exclusive authority to decide the issues of the existence, validity or scope of the Agreement, the

---

[3] Under "Arbitration Procedures," the Agreement provides, inter alia, that any arbitration will be conducted by the American Arbitration Association ("AAA"), Judicial Arbitration & Mediation Services/Endispute ("JAMS"), or National Arbitration Forum ("NAF"), to be selected by the party that did not initiate the action, or any other service to which both parties agree. *Id*. at p. 3. This section further provides that the arbitration rules of the chosen organization will govern the arbitration, except for a few specific rules contained in the Agreement that are not relevant here. *Id*.

The applicable rules of each of the three major ADR organizations provided for in the Agreement, one of which Defendant would certainly select to preside over the instant dispute, provide that the arbitrator has the authority to rule on his or her own jurisdiction, including any objections to the existence, validity or scope of the arbitration agreement. See AAA Employment Arbitration Rules and Mediation Procedures (eff. July 1, 2006), Rule 6(a) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement"); NAF Code of Procedure (eff. August 1, 2007), Rule 20(F) ("An Arbitrator shall have the power to rule on all issues, Claims, Responses, questions of arbitrability, and objections regarding the existence, scope, and validity of the Arbitration Agreement including all objections relating to jurisdiction, unconscionability, contract law, and enforceability of the Arbitration Agreement"); JAMS Employment Arbitration Rules & Procedures (eff. March 26, 2007), Rule 11(c) ("Jurisdictional and arbitrability disputes, including disputes over the existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator.

Case No. 09-CV-21754-MOORE/SIMONTON

parties have agreed that an arbitrator, not a court, decides those issues. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-944 (1995). The Supreme Court held in *First Options*: "[A] court must defer to an arbitrator's arbitrability decision when the parties submitted that matter to arbitration." *Id.* at 943 (emphasis added). Thus, when as in this case, the parties have agreed to submit the question of arbitrability to the arbitrator, the court's inquiry is limited to the issue of whether the party seeking arbitration is making a claim which is, on its face, governed by the contract. *See Terminix Int'l Co. LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005). ("When...parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." (quoting *Contec Corp. v. Remote Solution Co.,* 398 F.3d 205, 205 (2d Cir. 2005)).

Therefore, whether the Court chooses to examine the Agreement or defer to the Arbitrator, the outcome is the same: Plaintiff must arbitrate.

## IV. CONCLUSION

Plaintiff expressly agreed to arbitrate all of her claims asserted in the Complaint. Because Plaintiff's claims fall within the scope of the Arbitration Agreement, the Court lacks subject matter jurisdiction over them, and, as a result, should dismiss the lawsuit, or, alternatively, stay the proceedings pending arbitration.

For all the foregoing reasons, Defendant respectfully requests an order dismissing the Complaint in its entirety or, in the alternative, staying these proceedings and compelling Plaintiff to submit her claims to arbitration in accordance with the Arbitration Agreement. Defendant also respectfully requests that the Court award Defendant its attorneys' fees and costs for Plaintiff's unreasonable refusal to abide by her Arbitration Agreement.

Case No. 09-CV-21754-MOORE/SIMONTON

Respectfully submitted,

LITTLER MENDELSON, P.C.
One Biscayne Tower, Suite 1500
2 S. Biscayne Boulevard
Miami, Florida  33131
Tel: (305) 400-7500
Fax: (305) 603-2552


By:/s/ *Alex Londono*
Alex Londono, Esq.
Florida Bar No. 0011996
E-Mail:  alondono@littler.com

*Attorneys for Defendant Rent-A-Center, Inc.*

Case No. 09-CV-21754-MOORE/SIMONTON

**CASE NO. 09-CV-21754-MOORE/SIMONTON**

**CERTIFICATE OF SERVICE**

  I hereby certify that on the 17th day of August, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

              */s/ Alex Londono*
              Alex Londono

**SERVICE LIST**

Jason St-Fleur, Esq.
Jason St-Fleur & Associates, P.A.
Suite 300
152 N.E. 167th Street
Miami, Florida 33161
Tel:  305.947.2055
Fax: 305.397.1807
E-Mail: jason@stfleur.com
*Counsel for Plaintiff, Pamela Bhim*
[Via Notice of Electronic Filing]


Alex Londono, Esq.
Littler Mendelson, P.C.
One Biscayne Tower – Suite 1500
2 South Biscayne Boulevard
Miami, FL  33131
Tel. 305.400.7500
Fax 305.603.2552
E-Mail: alondono@littler.com
*Counsel for Defendant, Rent-A-Center, Inc.*