UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 09-21754-CIV-MOORE/SIMONTON

PAMELA BHIM,

    Plaintiff,

vs.

RENT-A-CENTER, INC.,

    Defendant.

_____/

### ORDER STAYING CASE AND REFERRING CLAIMS TO ARBITRATION

THIS CAUSE came before the Court upon Defendant Rent-A-Center, Inc.'s ("Rent-A-Center") Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1), (6) or in the Alternative to Stay Proceedings and Compel Arbitration (dkt # 5). Plaintiff Pamela Bhim ("Bhim") filed a Response (dkt # 7), and a pleading styled an "Amended Response" (dkt # 8).[1] Rent-A-Center filed a Reply (dkt # 9).

UPON CONSIDERATION of the Motion, Response, Reply, pertinent portions of the record, and being otherwise fully advised in the premises, the Court Orders as follows.

I.    **BACKGROUND**

This is a case of alleged employment discrimination. The following facts, which are taken from the Complaint, are not in dispute for purposes of the instant Motion. Rather, the

---

[1] Bhim did not seek leave to file the Amended Response, which she submitted ten days after the deadline for her Response, and on the day before Rent-A-Center's Reply was due. Nonetheless, because the differences between the Response and the Amended Response are immaterial and do not affect the Court's analysis, this Order will refer to the Amended Response.

Parties, an employer and its erstwhile employee, contest whether Bhim's claims must be referred to arbitration.

On May 1, 1995, Bhim began working at a RentWays rent-to-own store in Broward County, Florida. Bhim worked her way up, eventually becoming the store's general manager (the Complaint does not specify when). In January of 2002, José Grau ("Grau") became the district manager responsible for overseeing Bhim's store. Grau is Hispanic; Bhim is from Trinidad.

On July 26, 2006, the RentWays store where Bhim worked was acquired by the Defendant, Rent-A-Center. Rent-A-Center retained Bhim as the store's general manager. On November 17, 2006, Bhim and a Rent-A-Center representative signed a five-page contract titled "Mutual Agreement to Arbitrate," (the "Arbitration Agreement") which reads in pertinent part as follows:

> The Company and I mutually consent to the resolution by arbitration of all claims or controversies ("claims"), past, present or future, including without limitation, claims arising out of or related to my application for employment, assignment/employment, and/or the termination of my assignment/employment that the Company may have against me or that I may have against [Rent-A-Center, its agents, assigns, affiliated entities, or benefit plans].
>
> The only claims that are subject to arbitration are those that, in the absence of this Agreement, would have been justiciable under applicable state or federal law. The claims covered by this agreement include, but are not limited to . . . claims for wages or other compensation due; . . . tort claims for discrimination (including, but not limited to race, sex, sexual harassment, sexual orientation, religion, national origin, age, workers' compensation, marital status, medical condition, handicap or disability); . . . and claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance, except claims excluded in the section of this Agreement entitled "Claims Not Covered by the Agreement."

Arbitration Agreement, Def.'s Ex. A-2 at 1 (dkt # 5-2). Rent-A-Center states, through its Senior Director of Compensation and Benefits, Steven Spratt, that since July 2000 its company policy

2

has been to require all employees to agree to arbitrate all past, present, and future disputes. See Spratt Decl., Def.'s Ex. A at 1 (dkt # 5-2).

On March 25, 2008, Rent-A-Center, through Grau, fired Bhim. Bhim subsequently satisfied the prerequisites for commencing the instant lawsuit by filing a charge of employment discrimination with the United States Equal Employment Opportunity Commission within 180 days of her discharge, submitting a Notification of Right to Sue on April 22, 2009, and initiating this action within ninety days of the Notice's receipt. Bhim filed the Complaint in this action (dkt # 1) on June 25, 2009, alleging that Rent-A-Center fired her because of her national origin, in violation of Title VII of the Civil Rights Act of 1964, as codified at 42 U.S.C. § 2000e-2. Bhim alleges that Rent-A-Center's stated reason for firing her—that her store was poorly managed—was pretextual, and that similarly situated general managers at other stores were not fired.

Rent-A-Center filed the instant Motion on August 17, 2009, arguing that under the terms of the Arbitration Agreement, Bhim's claims must be referred to arbitration. Rent-A-Center asks the Court to dismiss this action or, in the alternative, to stay the proceedings pending the outcome of arbitration. Bhim concedes that she knowingly signed the Arbitration Agreement, and does not contest whether her claims are covered by the Agreement, but counters that the Agreement is void for lack of consideration, and is an unenforceable contract of adhesion. For the following reasons, the Court disagrees with Bhim, and concludes that her claims must be referred to arbitration.

**II.   ANALYSIS**

    **A.**   Applicable Law

The validity of an arbitration agreement is governed by the Federal Arbitration Act

("FAA"). See Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1312-13 (11th Cir. 2002). The FAA provides, in pertinent part, that

> [a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof . . . shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of such contract.

9 U.S.C. § 2. The FAA further provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in the proceeding with such arbitration.

9 U.S.C. § 3.

"The FAA establishes a 'federal policy favoring arbitration . . . requiring that [courts] rigorously enforce agreements to arbitrate.'" Davis v. Prudential Sec., Inc., 59 F.3d 1186, 1192 (11th Cir. 1995) (quoting Shearson/Am. Express Inc. v. MacMahon, 482 U.S. 220, 226 (1987)). "'The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" Creative Tile Mktg., Inc. v. SICIS Int'l. S.r.L., 922 F. Supp. 1534, 1538-39 (S.D. Fla. 1996) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc., 473 U.S. 614, 626 (1985)). Although the FAA governs the applicability of arbitration agreements, state law governs issues "concerning the validity, revocability, and enforceability of contracts generally." Perry v. Thomas, 482 U.S. 483, 492 n.9 (1987). Therefore, defenses such as fraud, unconscionability, and duress are governed by state law. See Dale v. Comcast, 498 F.3d 1216, 1219 (11th Cir. 2007). Florida law applies here, since the Arbitration Agreement was executed in Florida, Bhim's claims arose in Florida, and the

4

Agreement does not include a contrary choice-of-law provision. See Williams v. Eddie Accardi Motor Co., No. 07-cv-782-J-32JRK, 2008 WL 686222, at *4 (M.D. Fla. March 10, 2008).

The party opposing arbitration "has the affirmative duty of coming forward by way of affidavit or allegation of fact to show cause why the court should not compel arbitration," which is a burden "not unlike that of a party seeking summary judgment." Aronson v. Dean Witter Reynolds, Inc. 675 F. Supp. 1324, 1325 (S.D. Fla. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Accordingly, Bhim bears the burden here of showing cause why her claims should not be referred to arbitration.

B.  This Court Can Determine the Arbitrability of Bhim's Claims

As a threshold matter, the Court must determine whether it may properly rule on the instant dispute. Rent-A-Center argues that the arbitrability of Bhim's claims is itself a question that may only be resolved by the arbitrator, and that therefore this Court may not consider whether the Arbitration Agreement was validly formed. See Def.'s Mot. at 9-11 (dkt # 7).

Generally, arbitrability is a question for the trial court—and not the arbitrator—unless the parties "clearly and unmistakably" provide otherwise. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). Rent-A-Center argues that the Arbitration Agreement clearly and unmistakably reserved the question of arbitrability for the arbitrator, because the Agreement incorporates the rules of various arbitration services which empower those services to rule on the existence, scope, and validity of the Agreement.[2] "'When . . . parties explicitly incorporate rules

---

[2] Rent-A-Center cites the following: American Arbitration Association Employment Arbitration Rules and Mediation Procedures, Rule 6(a) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement"); National Arbitration Forum Code of Procedure, Rule 20(F) ("An Arbitrator shall have the power to rule on all issues, Claims, Responses, questions of arbitrability, and objections regarding the existence, scope, and validity of the Arbitration Agreement including all objections relating to jurisdiction, unconscionability, contract law, and enforceability of the Arbitration Agreement"); and Judicial Arbitration & Mediation

that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.'" Terminix Int'l Co. LP v. Palmer Ranch Ltd. P'ship, 432 F.3d 1327, 1332 (11th Cir. 2005) (quoting Contec Corp. v. Remote Solution Co., 398 F.3d 205, 208 (2d Cir. 2005)). In support of this argument, Rent-A-Center apparently refers to the following portion of the Arbitration Agreement:

> The Company and I agree that, except as provided in this Agreement, any arbitration shall be in accordance with the then-current National Employment Arbitration Procedures of the AAA or equivalent (if AAA is designated), the then-current J-A-M-S Employment Arbitration Rules or equivalent (if J-A-M-S is designated), the then-current NAF Code of Procedure (if NAF is designated), *or the applicable rules of any other service to which the parties mutually agree.*

Arbitration Agreement, Def.'s Ex. A-2 at 3 (dkt # 5-2) (emphasis added).

If the quote above ended immediately before the italicized language, the Arbitration Agreement likely would divest the Court of jurisdiction to decide arbitrability, because all of the named arbitration services have rules empowering them to decide that question. Rent-A-Center states that it will "certainly" select one of these three services. Def.'s Mot. at 10 n.3 (dkt # 5). Be that as it may, the Arbitration Agreement expressly contemplates that the Parties may designate another arbitrator's rules. Without reading the italicized language out of the contract, this Court cannot conclude that the Arbitration Agreement "clearly and unmistakably" shows that the Parties intended to submit questions of arbitrability solely to an arbitrator. Accordingly, this Court may reach and rule upon issues concerning the existence, scope, and validity of the Arbitration Agreement.

---

Services/Endispute Employment Arbitration Rules & Procedures, Rule 11(c) ("Jurisdictional and arbitrability disputes, including disputes over the existence, validity, interpretation or scope of the agreement under which the Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator").

6

### C. The Arbitration Agreement Is Supported by Adequate Consideration

Bhim's argument that the Arbitration Agreement lacked consideration is meritless. Under Florida law, "[a] promise, no matter how slight, qualifies as consideration if the promisor agrees to do something that he or she is not already obligated to do." Cintas Corp. No. 2 v. Schwalier, 901 So. 2d 307, 309 (Fla. 1st Dist. Ct. App. 2005). As Bhim acknowledges, the Arbitration Agreement includes a section titled "Consideration," which states that "[t]he promises by the Company and by me to arbitrate differences, rather than litigate them before courts or other bodies, provide consideration for each other." Arbitration Agreement Signature Page, Def.'s Ex. A-1 (dkt # 5-2). Here, Bhim received as consideration Rent-A-Center's promise to arbitrate any future claims that it might have against her—something that the company did not have a pre-existing obligation to do. Mutually binding promises to arbitrate provide consideration for one another, and give rise to an enforceable arbitration agreement. See Lemmon v. Lincoln Prop. Co., 307 F. Supp. 2d 1352, 1355 (M.D. Fla. 2004); Albert v. Nat'l Cash Register Co., 874 F. Supp. 1324, 1326 (S.D. Fla. 1994); Kinko's, Inc. v. Payne, 901 So. 2d 354, 355-56 (Fla. 2d Dist. Ct. App. 2005).

Even if Bhim received no other consideration, the mutual promises to arbitrate would be sufficient to render the Arbiration Agreement enforceable. Bhim received additional consideration, however, in the form of her continued employment at Rent-A-Center. That Rent-A-Center was not the company that originally hired Bhim is irrelevant; Bhim does not argue, or offer any evidence suggesting, that Rent-A-Center was under a pre-existing duty to continue her employment after acquiring her store. Bhim's continued employment at Rent-A-Center therefore provided further consideration in support of the Arbitration Agreement. See Cintas Corp. No. 2,

7

901 So. 2d at 309 (holding that promises of continued employment and increased pay and benefits provided consideration for arbitration contract).

      D.      <u>The Arbitration Agreement Is Not Unconscionable</u>

Under Florida law, to prevail on her defense that the Arbitration Agreement is unconscionable and therefore unenforceable, Bhim must establish that the Agreement is both procedurally and substantively unconscionable.[3] See Golden v. Mobil Oil Corp., 882 F.2d 490, 493 (11th Cir. 1989); Murphy v. Courtesy Ford LLC, 944 So. 2d 1131, 1134 (Fla. 3d Dist. Ct. App. 2006); Voicestream Wireless Corp. v. U.S. Commc'ns., Inc., 912 So. 2d 34, 39 (Fla. 4th Dist. Ct. App. 2005). Procedural unconscionability "'relates to the manner in which the contract was entered and it involves consideration of such issues as the relative bargaining power of the parties and their ability to know and understand the disputed contract terms.'" Id. (quoting Powertel Inc. v. Bexley, 743 So. 2d 570, 574 (Fla. 1st Dist. Ct. App. 1999)). A contract is substantively unconscionable if its terms "are so 'outrageously unfair' as to 'shock the judicial conscience.'" Id. at 40 (quoting Gainesville Health Care Ctr., Inc. v. Weston, 857 So. 2d 278,

---

[3] Bhim's Amended Response in Opposition, which is notably devoid of citation to relevant Florida authority, does not explicitly argue that the contract is unconscionable. Rather, she claims that the Arbitration Agreement is unenforceable because it is an "adhesion contract," which she defines as a contract "in which two parties agree to do a certain thing, in which one side has all the bargaining power and uses it to write the contract primarily to his or her advantage." Pl.'s Amended Resp. in Opp'n at 5 (dkt # 8). Florida law, however, defines an adhesion contract as "a standardized contract form offered to consumers of goods and services on essentially [a] 'take it or leave it' basis without affording [the] consumer [a] realistic opportunity to bargain and under such conditions that [the] consumer cannot obtain [the] desired product or services except by acquiescing in the form contract." Gainesville Health Care Ctr., Inc. v. Weston, 857 So. 2d 278, 285 (Fla. 1st Dist. Ct. App. 2003). Whether a contract is one of adhesion relates only to the procedural unconscionability prong—not the substantive unconscionability prong—and both prongs must be satisfied to render a contract unenforceable. Furthermore, the presence of an adhesion contract may be a "strong indicator" of procedural unconscionability but does not, on its own, require a finding of procedural unconscionability. See Voicestream Wireless Corp. v. U.S. Commc'ns., Inc., 912 So. 2d 34, 40 (Fla. 4th Dist. Ct. App. 2005). Because Bhim's Amended Response alleges procedural and substantive deficiencies in the Arbitration Agreement, the Court construes her argument as an unconscionability defense.

285 (Fla. 1st Dist. Ct. App. 2003)). Substantive unconscionability and procedural unconscionability need not exist in equal amounts for the contract to be unenforceable, but there must at least be a modicum of both. See id. at 38.

### 1. Substantive Unconscionability

Bhim identifies only one provision in the Arbitration Agreement as substantively deficient: the clause limiting depositions during the arbitration process. The section of the Arbitration Agreement that discusses discovery reads, in its entirety, as follows:

> Each party shall have the right to take the deposition of one individual and any expert witness designated by another party. Each party also shall have the right to propound requests for production of documents to any party. The subpoena right specified below shall be applicable to any discovery pursuant to this paragraph. The Arbitrator shall have exclusive authority to consider and enter orders concerning any issue arising related to the quantity or conduct of discovery. Each party to this Agreement can petition and/or request that the Arbitrator allow additional discovery and additional discovery may be conducted pursuant to the parties' mutual stipulation or as ordered by the Arbitrator to the extent the Arbitrator determines there is good cause therefore.

Arbitration Agreement, Def.'s Ex. A-2 at 2 (dkt # 5-2). The Arbitration Agreement further provides that "[e]ach party shall have the right to subpoena witnesses and documents for the arbitration, as well as documents relevant to the case from third parties." Id.

Bhim objects specifically that each party to the arbitration will be limited to deposing one non-expert witness. As the Supreme Court has recognized, however, it is entirely permissible for an arbitration agreement to limit the scope of discovery. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 31 (1991) (stating that discovery procedures in arbitration "might not be as extensive as in the federal courts, [but] by agreeing to arbitrate, a party trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration") (internal quotation marks omitted); see also Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1378 (11th Cir. 2005) (stating that discovery limitations are consistent with the

goals touted by Gilmer). Bhim also ignores the provisions of the Arbitration Agreement which provide for discovery by subpoena and request for production, and which permit additional discovery by leave of the arbitrator or by mutual stipulation. Bhim fails to explain why this amount of discovery would not provide her a fair opportunity to present her claims, and therefore has not established that the discovery limitations are substantively unconscionable. See Gilmer, 500 U.S. at 31.

Furthermore, the deposition limit does not "shock the conscience" of the Court. In the face of similar contractual limitations on discovery, this Court and others have repeatedly found arbitration agreements enforceable. See Kotch v. Clear Channel Broad., Inc., No. 03-61951-CIV-ALTONAGA, 2004 WL 483502, at *3 (S.D. Fla. March 8, 2004) (enforcing arbitration agreement limiting depositions to three per side and providing that arbitrator could order additional discovery); Fernandez v. Clear Channel Broad., Inc., 268 F. Supp. 2d 1365, 1368 (S.D. Fla. 2003) (enforcing arbitration agreement limiting depositions to three per side and permitting additional depositions upon showing of "good cause"); Wilks v. Pep Boys, 241 F. Supp. 2d 860, 864-65 (M.D. Tenn. 2003) (enforcing arbitration agreement limiting depositions to one per side and allowing for additional discovery as ordered by arbitrator).

2. Procedural Unconscionability

Bhim does not suggest that she misunderstood the Arbitration Agreement, that the Agreement was misleading, that the terms were buried in fine print, that she lacked an opportunity to read and review the Agreement, or that she signed the Agreement unknowingly or involuntarily. Rather, her only discussion of procedural unconscionability is her claim that the Arbitration Agreement was an adhesion contract, because she had no meaningful choice but to sign it in order to continue her employment.

Undeniably, as in many employer-employee relationships, there was a disparity in bargaining power between Bhim, an individual, and Rent-A-Center, a corporation which admittedly requires all its employees to sign arbitration agreements. See Spratt Decl., Def.'s Ex. A at 1 (dkt # 5-2). That disparity militates toward a finding of procedural unconscionability. Without more, however, "'[m]ere inequality in bargaining power . . . is not a sufficient reason to hold that arbitration agreements are [unenforceable].'" Caley, 428 F.3d at 1378 (quoting Gilmer, 500 U.S. at 32-33)). Further, even if the Arbitration Agreement was presented on a "take it or leave it" basis, Bhim has not shown that she lacked employment alternatives to Rent-A-Center in the event that she chose to "leave it." See Henry v. Pizza Hut of Am., Inc., No. 07-cv-01128-Orl-DAB, 2007 WL 2827722, at *7 (M.D. Fla. Sept. 27, 2007) (enforcing arbitration agreement despite disparity in bargaining power where terminated employee "has not alleged that he lacked alternatives to working at Pizza Hut"); see also Caley, 428 F.3d at 1377-78 (applying Georgia law and concluding that arbitration agreement was not procedurally unconscionable, despite disparity in bargaining power, where agreement was presented fairly and terms were clear).

Given the lack of evidence that the Arbitration Agreement was procedurally deficient in any other respect, the Arbitration Agreement was not, as a whole, procedurally unconscionable. To the extent there is any evidence of procedural unconscionability, the Arbitration Agreement is nonetheless enforceable because Bhim has failed to demonstrate any substantive unconscionability. See Henry, 2007 WL 2827722, at *7.

E.   Bhim's Claims Are Stayed, Not Dismissed

Rent-A-Center requests that the Court dismiss Bhim's Complaint rather than stay the proceedings pending arbitration, arguing that a stay is appropriate only where some, but not all of a plaintiff's claims are arbitrable. Prior decisions of this Court have taken either course.

11

Compare Olsher Metals Corp. v. Olsher, No. 01-3212-CIV-JORDAN, 2003 WL 2600635, at *9 (S.D. Fla. March 26, 2003) (dismissing arbitrable claims) with Albert, 874 F. Supp. at 1328 (staying arbitrable claims). In what appears to be its most direct discussion of this question, the Eleventh Circuit has expressed its preference that district courts stay arbitrable claims rather than dismiss them. See Bender v. A.G. Edwards & Sons, Inc., 971 F.2d 698, 699 (11th Cir. 1992) (reversing dismissal of arbitrable claims, remanding with instructions to enter stay, and stating that "[u]pon finding that a claim is subject to an arbitration agreement, the court should order that the action be stayed pending arbitration"); see also 9 U.S.C. § 3. Accordingly, Bhim's claims will be stayed pending arbitration.

### III. CONCLUSION

For the foregoing reasons, it is

ORDERED AND ADJUDGED that Defendants' Motion to Dismiss Or in the Alternative to Stay Proceedings in Part and Compel Arbitration (dkt # 5) is GRANTED IN PART. It is further

ORDERED AND ADJUDGED as follows:

1. The Parties are hereby ORDERED to submit this dispute to arbitration pursuant to the provisions of the Arbitration Agreement within thirty (30) days of the date of this Order.

2. All proceedings in this action are STAYED pending arbitration of the Parties' dispute.

3. Rent-A-Center's Motion is DENIED to the extent it seeks dismissal of Bhim's Complaint.

4. The Parties are directed to notify the Court within thirty (30) days of completing arbitration, at which time Rent-A-Center may renew its request to have this action dismissed.

5. The Clerk of the Court is directed to administratively CLOSE this case. All pending Motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida this 16th day of September, 2009.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc: All counsel of record